# PROTECT the PUBLIC'S TRUST

VIA ELECTRONIC MAIL					May 4, 2022

FOIA Officer
U.S. Agency for International Development
1300 Pennsylvania Avenue, NW
USAID Annex, M/MS/IRD, Room 2.4.0A
Washington, DC 20523

**Re: Communications Involving Natasha Bilimoria or any Political Appointees at the United States Agency for International Development Regarding the Inclusion of $290 Million to Gavi, the Vaccine Alliance, in the 2023 Budget Proposal**

Dear FOIA Officer,

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* (FOIA), from the Protect the Public's Trust (PPT), a nonpartisan organization dedicated to promoting ethics in government and restoring the public's trust in government officials.

## Records Requested

PPT requests the following records relating to appointees at the United States Agency for International Development (USAID):

1. All communications, documents, and other records from January 20, 2021 through the date this request is processed, from Natasha Bilimoria or any other political appointee regarding the inclusion of $290 million to Gavi, the Vaccine Alliance to: "reach children with cost-effective vaccines to accelerate progress towards preventing child deaths" as mentioned in the FY 2023 President's budget. This proposal was included in a White House Fact Sheet titled "FACT SHEET: The Biden Administration's Historic Investment in Pandemic Preparedness and Biodefense in the FY 2023 President's Budget."[1] These records should include:

    a. Any communications discussing Gavi, the Vaccine Alliance or other non-profits or NGOs considered for the proposed funding both within USAID and between employees in USAID and staff within the White House

---

[1] https://www.whitehouse.gov/briefing-room/statements-releases/2022/04/07/fact-sheet-the-biden-administrations-commitment-to-global-health-in-the-fy-2023-presidents-budget/



    Office of Science and Technology Policy (OSTP) or members of the
    Pandemic Innovation Task Force.
- b. Communications involving any political appointees within USAID, Natasha Bilimoria, and staff at the White House, OSTP, or the Pandemic Innovation Task Force regarding the mention of Gavi or the proposed expenditure in the White House Fact Sheet identified above.
- c. Any records related to the development of criteria for determining eligibility to receive funding to "reach children with cost-effective vaccines to accelerate progress towards preventing child deaths."

For this request, the term "all records" refers to, but is not limited to, any and all documents, correspondence (including, but not limited to, inter and/or intra-agency correspondence as well as correspondence with entities or individuals outside the federal government), emails, text messages, letters, notes, telephone records, telephone notes, minutes, memoranda, comments, files, presentations, consultations, assessments, evaluations, schedules, telephone logs, digital logs such as those produced by Microsoft Teams (including Teams file folders or collaborative work documents housed in Teams), papers published and/or unpublished, reports, studies, photographs and other images, data, maps, and/or all other responsive records, in draft or final form.

This request is not meant to exclude any other request that, although not specifically requested, is reasonably related to the subject matter of this request. If you or your office have destroyed or determine to withhold any records that could be reasonably construed to be responsive to this request, I ask that you indicate this fact and the reasons therefore in your response.

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under the FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption. FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release. Please include a detailed ledger which includes:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item; and

2. Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.



If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and mail the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

PPT is willing to receive records on a rolling basis.

To facilitate this request, we request that the FOIA office use the Agency's enterprise records management system to search and process this request.

Finally, FOIA's "frequently requested record" provision was enacted as part of the 1996 Electronic Freedom of Information Act Amendments and requires all federal agencies to give "reading room" treatment to any FOIA-processed records that, "because of the nature of their subject matter, the agency determines have become the subject of subsequent requests for substantially the same records." 5 U.S.C.§552(a)(2)(D)(ii)(I). Also, enacted as part of the 2016 FOIA Improvement Act, FOIA's Rule of 3 requires all federal agencies to proactively "make available for public inspection in an electronic format" "copies of records, regardless of form or format ... that have been released to any person ... and ... that have been requested 3 or more times." 5 U.S.C.§552(a)(2)(D)(ii)(I). Therefore, we respectfully request that you make available online any records that the agency determines will become the subject of subsequent requests for substantially the same records, and records that have been requested three or more times.

**Format of Requested Records**

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. See, e.g., 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily accessible" means text-searchable and OCR-formatted. See 5 U.S.C. § 552(a)(3)(B). We ask that you please provide all records in an electronic format. Additionally, please provide the records either in (1) load-ready format with a CSV file index or Excel spreadsheet, or; (2) for files that are in .PDF format, without any "portfolios" or "embedded files." Portfolios and embedded files within files are not readily accessible. Please do not provide the records in a single, or "batched," .PDF file. We appreciate the inclusion of an index.

If you should seek to withhold or redact any responsive records, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. § 552(b). Please correlate any redactions with specific exemptions under FOIA.



**Fee Waiver Request**

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as PPT access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ...." 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

I. PPT Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The USAID FOIA regulations at 22 C.F.R. § 212.14(k) establish the same standard.

Thus, USAID must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. 22 C.F.R. § 212.14(k). As shown below, PPT meets each of these factors.

### A. The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of USAID. This request asks for: All communications, documents, and other records from January 20, 2021 through the date this request is processed, involving Natasha Bilimoria or any political appointee regarding the inclusion of $290 million to Gavi, the Vaccine Alliance to in the FY 2023 President's budget.

### B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow PPT to convey to the public information about communications involving Natasha Bilimoria, a former employee of Gavi, and any USAID political appointees regarding the inclusion of $290 million to Gavi, the Vaccine Alliance in the FY 2023 President's budget. After disclosing these records, PPT will inform the public about any such communications to ensure decisions are being made consistent with the law and all applicable requirements. Once the information is made available, PPT will analyze it and present it to its followers and the general public in a manner that will meaningfully enhance the public's understanding of this topic. The public would be well-served to know who within USAID participated in that process and how they contributed to it.

Thus, the requested records are likely to contribute to an understanding of USAID operations and activities.

### C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding How USAID and the Federal Government Award Large Funding Allocations.

The requested records will contribute to public understanding of how the government determined to include a funding allocation of $290 million to Gavi. The organization is the former employer of a high-ranking political appointee at USAID, who received a waiver to participate in matters involving the organization. The public is well-served by knowing the process through which a well-connected organization receives a large funding allotment from the federal government. Even well-intentioned and effective programs merit oversight of their funding decisions. As explained above, the records will contribute to public understanding of this topic.



On March 28, 2022, the Biden Administration released a statement outlining historic investment plans for pandemic preparedness and biodefense in the FY 2023 budget. Gavi, the Vaccine Alliance is expected to receive $290 million with the passage of the proposal. The White House statement explains the funds will be used to: "reach children with cost-effective vaccines to accelerate progress towards preventing child deaths."[2] Gavi is the former employer of Natasha Bilimoria. She worked as the U.S. director of the Switzerland-based nonprofit group before joining the Biden administration in 2021. Additionally, the Washington Examiner reported she was the: "senior-most executive and spokesperson in the U.S., and she played a key role in securing a $4 billion congressional appropriation for the group in December 2020 to help fund its COVID-19 vaccine activities."[3] Considering the $290 million being allocated to an organization with apparent ties to a high-level USAID appointee, it is in the public's interest to be informed of any communications involving political appointees or Natasha Bilimoria regarding the President's budget proposal. Ensuring compliance with the rules of ethics and avoiding conflicts of interest or the appearance of bias in official decision making is paramount to ensuring the public's trust in government. PPT will use the information it obtains from the disclosed records to educate the public at large about any communications regarding Gavi's budget plans from those making USAID's most important decisions. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through PPT's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which concern communications from any political appointee or the named appointee regarding the inclusion of $290 million to Gavi in the FY 2023 President's budget. We are also unaware of any previous release to the public of these or similar records. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005)

---

[2] Ibid
[3] https://www.washingtonexaminer.com/news/white-house-earmarks-790-million-to-groups-with-ties-to-senior-biden-officials



(because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations...."

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to the public's understanding of communications regarding the allocation of funds to Gavi. The public is always well served when it knows about communications between government officials, especially when said communications are regarding the expenditure of a $290 billion. Hence, there can be no dispute that disclosure of the requested records will educate the public about this large expenditure.

### D. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

PPT is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the communications, documents, and other records from Natasha Bilimoria or other political appointees regarding a large expenditure to a named organization in the FY 2023 President's budget as compared to the level of public understanding that exists prior to the disclosure. Indeed, public understanding will be significantly increased as a result of disclosure.

The records are also certain to shed light on USAID's compliance with its own mission and responsibility. Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of this FOIA. Thus, PPT meets this factor as well.

### II. PPT has the Ability to Disseminate the Requested Information Broadly.

PPT is a nonpartisan organization that informs, educates, and counsels the public about the importance of government officials acting consistently with their ethics obligations. A key component of being able to fulfill this mission and educate the public about these duties is access to information that articulates what communications have taken place regarding the inclusion of $290 million to Gavi in the FY 2023 President's budget. PPT intends to publish information from requested records on its website, distribute the records and expert analysis to its followers through social media channels including Twitter, Facebook, and other similar platforms. PPT also has a robust network of reporters, bloggers, and media publications interested in its content and that have durable relationships with the organization. PPT intends to use any or all of these far-reaching media outlets to share with the public information obtained as a result of this request



Through these means, PPT will ensure: (1) that the information requested contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that PPT possesses the expertise to explain the requested information to the public; (4) that PPT possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes PPT as a reliable source in the field of government ethics and conduct.

Public oversight and enhanced understanding of USAID duties is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994). PPT need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for PPT to show how it distributes information to the public generally. *Id*.

       III. Obtaining the Requested Records is of No Commercial Interest to PPT.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to PPT's role of educating the general public. PPT is a nonpartisan organization with supporters and members of the public who seek a transparent, ethical and impartial government that makes decisions in the best interests of all Americans. PPT has no commercial interest and will realize no commercial benefit from the release of the requested records.

       IV. Conclusion

For all of the foregoing reasons, PPT qualifies for a full fee waiver. We hope that USAID will immediately grant this fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

If you have any questions, please contact me at foia@protectpublicstrust.org. All records and any related correspondence should be sent to my attention at the address below.

       Sincerely,

       Morgan Yardis
       Research and Publication Associate
       foia@protectpublicstrust.org